OPINION
{¶ 1} Harland Watson appeals from the trial court's determination that he is a sexual predator and from the sentence imposed upon him. On January 16, 2002, Watson was convicted of gross sexual imposition and was sentenced to a five year term of incarceration.
 {¶ 2} At the predator hearing the State offered the pre-sentence investigation report in evidence over objection of Watson's counsel. The report contains an interview by police with witnesses to Watson's offense. A ten year old child witnessed Watson place his hands down the panties of a nine year old girl while she slept. Watson denied the offense to the probation department investigation.
 {¶ 3} The report indicated Watson was convicted of sexual abuse in the first degree in West Virginia in 1986. The conviction resulted from Watson molesting his sister's daughter. The report also indicated that Watson lost permanent custody of his three children due to his sexual abuse of his three year old daughter. During the children services investigation, Watson's eighteen year old step-daughter alleged that Watson had sexually abused her repeatedly from age four to age seven until her mother divorced Watson.
 {¶ 4} Watson was also convicted of domestic violence in May 2001 and brandishing a weapon in 1984. Watson was 39 years of age at the time of his conviction and he had an eighth grade education.
 {¶ 5} Sharon Dalton, a Montgomery County Probation Officer, testified at the predator hearing that she conducted the pre-sentence investigation of Watson. She also prepared a Senate Bill 180 Screening Instrument and concluded that Watson should be determined by the court to be a sexual predator. She noted that four statutory factors weighed in favor of that classification. She noted that Watson's prior offenses, including sexual offenses weighed in favor of the predator classification as well as the fact that Watson's assault victim was under the age of eighteen. She also noted that Watson's history of sex offenses all involving victims under ten was part of a demonstrated pattern of abuse. Finally Dalton noted that additional characteristics that contributed to Watson's conduct were his three failed marriages and additional allegations of sexual abuse.
 {¶ 6} Dr. Kim Stookey, a clinical psychologist, interviewed Watson and determined that he is a heterosexual, extra-familial child molester. She testified at the hearing that such offenders tend to recidivate at moderate to high rates. She testified that Watson's risk for recidivism was also increased by his history of prior criminal and sexual offenses, the large size of his victim pool, his long standing pattern of reoffending, and his lack of a stable employment history. Dr. Stookey testified that Watson denied
 {¶ 7} committing the offense charged and denied any abuse of alcohol or drugs. Watson also told Dr. Stookey that he had never received psychiatric, psychological or substance abuse treatment. Dr. Stookey said she administered the MMPI test to Watson but obtained invalid results because Watson appeared to answer the test questions randomly.
 {¶ 8} On cross-examination, Dr. Stookey admitted she had no opinion whether Watson is a sexual predator. She adopted the position taken in the cover letter accompanying her report that sexual predator is a legal term rather than a psychologically defined condition. She stated she evaluated Watson to discover whether he had known clinical risk factors for reoffending commonly associated with sexual offenders.
 {¶ 9} Dr. Stookey said that since Watson is 39 his risk for recidivism is not increased by his age. Dr. Stookey said Watson's risk for recidivism appears to be significantly increased by having a prior criminal record which includes sexual offenses. She also noted that while research has indicated that participation in an appropriate sex offender treatment may reduce the risk of reoffending, there is no evidence that Watson ever participated in any such program.
 {¶ 10} In finding that Watson is a sexual predator, the trial court applied the statutory factors found at R.C. 2950.09(B)(3). The trial judge noted that Watson's prior criminal record was of great concern to him. The trial court assigned the greatest weight to that factor. (Tr. 85). The trial court assigned no weight to Dr. Stookey's concern about the size of the victim pool (ages 3-19) as there was no evidence that Watson abused a nineteen year old. The trial court noted that while there was some evidence that Watson may have attended a couple of sex offender counseling sessions in 1987 relating to his 1986 West Virginia conviction, the trial court found such prior treatment insignificant. (Tr. 86). The trial court determined that Watson's failure to receive sexual offender treatment in the past to be a significant statutory factor. Finally, the trial court gave considerable weight to Watson's demonstrated lack of remorse for his pattern of sexual offenses in determining his likelihood of re-offending.
 {¶ 11} In his first assignment, Watson contends that the trial court's determination that he is a sexual predator was against the manifest weight of the evidence.
 {¶ 12} Watson contends that much of the evidence presented in the hearing was unreliable hearsay. He also contends there are a number of statutory factors weighing in his favor on the issue of whether he should have been determined to be a predator. He makes the following argument in his brief:
 {¶ 13} "There are a number of factors weighing in Appellant's favor in this case. He is outside the age of high risk for recidivism. (Tr. 52). There is no indication of drug
 {¶ 14} and alcohol abuse, or that he used drugs or alcohol to impair his alleged victims. (Tr. 25, 55). Appellant has no history of mental illness or disability. (Tr. 55). Moreover, there is no indication that he employed cruelty or threats in the commission of his alleged offenses. (Tr. 48). There is no evidence in the record to suggest that she attempted to determine the underlying cause for Appellant's random responses. As a result of the unreliability of the test, neither Appellant nor the trial court had the benefit of these test results.
 {¶ 15} "Appellant additionally confused Ms. Stookey with his account of his criminal record. (Tr. 49). Dr. Stookey inaccurately determined the age range of Appellant's alleged victims. In 1986, an 18-year-old woman claimed Appellant had abused her approximately 11 years beforehand. It appears that Dr. Stookey calculated the age range of Appellant's victims by using the 18-year-old's age at the time she reported the alleged incident rather than her age at the time of the alleged abuse. Consequently, Appellant's likelihood of recidivism was overstated as a result of the increase in the size of the potential `victim pool.' (Tr. 54). Furthermore, the presentence investigation and psychological reports did not document sexual abuse counseling Appellant had received. (Tr. 67)."
 {¶ 16} The State argues that Watson's arguments carry no force because the record clearly indicates that the trial court was aware of Watson's claim that he briefly attended a sexual offender treatment program in 1987 and the court was also aware that the victim pool did not include a 19-year-old victim. We agree.
 {¶ 17} The Ohio Supreme Court has indicated that trial courts are free to consider presentence reports because they customarily contain reliable hearsay. State v. Cook (1998), 83 Ohio St.3d 404, 425,1998-Ohio-291. Due process requires only that the defendant be given a chance to rebut any alleged inaccuracies. State v. Covey (1989),46 Ohio St.3d 20. Appellant's objection to the trial court's use of the investigation report is not well taken.
 {¶ 18} Sexual predator means a person who has been convicted of a sexually oriented offense and is likely to engage in one or more sexually oriented offenses in the future. R.C. 2950.01(E)(1). The court shall determine by clear and convincing evidence whether the subject offender is a sexual predator. R.C. 2950.09(B). A judge must consider the guidelines set out in R.C. 2950.09(B)(2), but the judge has discretion to determine what weight to assign each guideline. State v. Thompson
(2001), 92 Ohio
 {¶ 19} St.3d 584. The facts in this matter are not essentially in dispute, the inferences to be drawn from those facts are.
 {¶ 20} We find that the trial court could reasonably infer from the evidence presented at the predator hearing that Watson is likely to engage in one or more sexually oriented offenses in the future. We also find there is sufficient evidence for the trial court to make this finding by clear and convincing evidence.
 {¶ 21} There was evidence that Watson engaged in a pattern of abusing small children over an extended period of time. He even abused his own children. He also did not receive any significant treatment for his sexual deviancy. Lack of sexual offender treatment and subsequent reoffending are facts which increase the risk of recidivism. State v.Campbell (May 25, 2001), Mont. App. No. 18500; State v. Champion (August 4, 2000), Mont. App. No. 18044. Watson also denied responsibility for his conduct. This conduct may also be considered as a factor increasing the chance of reoffending. See, State v. Ogden (Sept. 25, 2000), Mont. App. No. 18110. Lastly, Dr. Stookey opined that Watson was the type of offender, a heterosexual, extra familial child molester, who tend to recidivate at moderate to high rates. The trial court's judgment is not against the manifest weight of the evidence. The first assignment of error is overruled.
 {¶ 22} In his second assignment, Watson contends the trial court erred in sentencing him to the maximum term for gross sexual imposition. He notes that there was no firearm used, he has no demonstrated pattern of drug or alcohol abuse and no history of mental illness. He also notes that there was no cruelty or threats involved in the commission of the alleged offenses.
 {¶ 23} The State, for its part, argues that the trial court appropriately sentenced Watson to the maximum five year sentence for the third degree felony because R.C. 2929.14(C) permits a trial court to impose a maximum sentence when the offender poses the greatest likelihood of committing future crimes.
 {¶ 24} There is evidence in this record to support the trial court's finding that Watson poses the greatest likelihood of committing future crimes. He has not responded well to previous sanctions upon him. Dr. Stookey's testimony that Watson poses a moderate to high risk of reoffending is also persuasive. The second assignment of error is also overruled.
 {¶ 25} The judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.